UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
SIMON LEGER,

                  Plaintiff,

   -against-

NAVILA ASSET MANAGEMENT INC.,
and MIZANUR RAHMAN,

                  Defendants.
----------------------------------------------------X

REPORT AND
RECOMMENDATION
20 CV 3820 (EK)(RML)

LEVY, United States Magistrate Judge:

       By order dated June 22, 2022, the Honorable Eric R. Komitee, United States District Judge, referred defendants' motion to vacate the default judgment against them to me for report and recommendation. For the reasons stated below, I respectfully recommend that the motion to vacate the default judgment be denied.

## BACKGROUND AND FACTS

       Plaintiff Simon Leger ("plaintiff") commenced this action on August 20, 2020 against defendants Navila Asset Management Inc. (the "corporate defendant") and Mizanur Rhaman ("Rhaman"[1] or the "individual defendant") (together, "defendants") to foreclose on a mortgage encumbering the property at 415 Bradford Street, Brooklyn, New York. (Complaint, dated Aug. 20, 2020 ("Compl."), Dkt. No. 1, ¶ 1.)[2] Plaintiff filed a motion for default judgment

---

[1] Individual defendant's last name is spelled "Rhaman," not "Rahman" as stated in plaintiff's filings and the case caption. (Declaration of Mizanur Rhaman, dated Mar. 17, 2022 ("Rhaman Decl."), Dkt. No. 17-1, ¶ 1.)

[2] Defendants are currently defending a second action brought by plaintiff's law firm: Crosby Cap. USA, LLC v. Amguard Ins. Co. et al, 20 CV 5990 ("Crosby"), which identifies the same mortgage at issue in the instant case as being held by the plaintiff in that action. (Declaration of Steven B. Ross, Esq., dated Mar. 25, 2022 ("Ross Decl."), Dkt. No. 17-2, ¶ 6.)

against defendants on November 3, 2020. I issued a Report and Recommendation recommending that the motion be granted. (Report and Recommendation, filed Jan. 25, 2022, Dkt. No. 13.) By Memorandum and Order dated March 8, 2022, Judge Komitee adopted my Report and Recommendation and issued a default judgment against defendants as well as a judgment of foreclosure and sale in the amount of $477,500 plus interest and fees. (Memorandum and Order, filed Mar. 8, 2022, Dkt. No. 15.) The Memorandum and Order was served on both defendants by first-class mail. (Affidavit of Service of Elliot Brand, sworn to Mar. 8, 2022, Dkt. No. 16.)

On March 25, 2022, defendants moved to set aside the default judgment. (Motion to Set Aside Default, dated Mar. 25, 2022 ("Mot. to Vacate"), Dkt. No. 17.) Plaintiff's time to file a response to defendants' motion was extended three times and the opposition was ultimately filed on June 21, 2022. (Opposition to Motion to Set Aside Default, dated June 21, 2022 ("Opp. to Mot."), Dkt. No. 22.) Judge Komitee referred defendants' motion to me for report and recommendation on June 22, 2022. I conducted a hearing on June 30, 2022, during which the parties requested that the court reserve judgment on the motion to vacate the default until a status report regarding settlement discussions was filed. (See Minute Entry, filed June 30, 2022.) Finally, on November 9, 2022, the parties indicated that settlement was at an impasse and requested that the motion to vacate the default be considered. (Letter, dated Nov. 9, 2022, Dkt. No. 24.)

## DISCUSSION

A. Standard on a Motion to Vacate Default

Defendants move to vacate the default judgment under Rule 60(b) of the Federal Rules of Civil Procedure. The decision whether to vacate a default judgment is "addressed to the

2

sound discretion of the district court." New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005) (quoting State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada, 347 F.3d 158, 166 (2d Cir. 2004)).  A district court's "discretion is nonetheless not unlimited . . . [because of the] oft-stated preference for resolving disputes on the merits." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993).  Indeed, "defaults are generally disfavored and are reserved for rare occasions . . . ." Id.  Therefore, in ruling on a motion to vacate entry of default, all doubts must be resolved in favor of the party seeking relief to ensure that disputes are resolved on their merits where possible.  Powerserve Int'l, Inc. v. Lavi, 239 F.3d 508, 514 (2d Cir. 2001).

In deciding a motion to vacate a default judgment under Rule 60(b), "the district court is to be guided principally by three factors: (1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." S.E.C. v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998).  These are the same factors courts consider on a motion to set aside an entry of default under Rule 55(c), but "courts apply the factors more rigorously in the case of a default judgment because the concepts of finality and litigation repose are more deeply implicated in [that] action." Enron Oil Corp., 10 F.3d at 96 (citation omitted).  A defendant's failure to meet one of these factors will generally not defeat a motion to vacate default if the other factors weigh in favor of setting aside the default.  Strulowitz v. Flavor Boutique 796 Inc., No. 18 CV 8382, 2020 WL 2749564, at *2 (S.D.N.Y. May 26, 2020) (citing Sea Hope Navigation Inc. v. Novel Commodities SA, 978 F. Supp. 2d 333, 341 (S.D.N.Y. 2013) (collecting cases)).  The court also considers "relevant equitable factors," including "whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." Enron, at 96 (citing Sony Corp. v. Elm State

3

Elecs., Inc., 800 F.2d 317, 320 (2d Cir. 1986)).  I will consider each factor in turn.

        1.  <u>Willfulness</u>

Whether the defendants' default was "willful" is the most important factor the court must consider on a motion to vacate a default judgment.  See <u>De Curtis v. Ferrandina</u>, 529 F. App'x 85, 86 (2d Cir. 2013) ("Of these factors, willfulness carries the most weight."); <u>Gil v. Frantzis</u>, No. 17 CV 1520, 2019 WL 4784674, at *5 (E.D.N.Y. Oct. 1, 2019) (same).  "[I]n general, courts should not set aside a default that is found to be willful."  <u>Star Asia Int'l, Inc. v. Old Dominion Footwear, Inc.</u>, No. 18 CV 4741, 2019 WL 2371632, at *1 (S.D.N.Y. June 5, 2019) (concluding that the default was willful and therefore declining to examine the other factors in the analysis) (citing <u>S.E.C. v. Risman</u>, 7 F. App'x 30, 31 (2d Cir. 2001)).  Willfulness requires more than negligence or carelessness – courts will find a default willful where a litigant's conduct is "egregious" or "not satisfactorily explained."  <u>McNulty</u>, 137 F.3d at 738.  However, "a finding of bad faith is [not] a necessary predicate to concluding that a defendant acted 'willfully.'"  <u>Gucci Am., Inc. v. Gold Ctr. Jewelry</u>, 158 F.3d 631, 635 (2d Cir. 1998).  Instead, to find that a default was willful, "it is sufficient to conclude that the defendant defaulted deliberately."  <u>Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC</u>, 779 F.3d 182, 187 (2d Cir. 2015) (internal quotation marks omitted).

Here, defendants claim they were not served with the summons and complaint and did not have notice of the action.  Additionally, defendants claim their default was not willful due to excusable neglect.  I will address both claims.

        i.  <u>Service</u>

A court may vacate a default judgment if "the judgment is void."  FED. R. CIV. P. 60(b)(4).  If defendants were not served with the complaint, the default judgment would be void

4

for lack of personal jurisdiction.  See United States v. Kadoch, No. 96 CV 4720, 2011 WL 2680510, at *2 (E.D.N.Y. June 10, 2011), report and recommendation adopted, 2011 WL 2680362 (E.D.N.Y. July 8, 2011); see also Sartor v. Toussaint, 70 F. App'x 11, 13 (2d Cir. 2003) ("A judgment is void for lack of personal jurisdiction over the defendant where service of process was not properly effected.").  If defendants cannot support the contention that they were not properly served, their default may be considered willful.  See Nana v. Le Viking LLC, No. 17 CV 928, 2020 WL 3182769, at *3 (S.D.N.Y. June 15, 2020) (where it is shown that a defendant is aware of the action pending against him, that defendant is deemed to have acted willfully if he fails to file a responsive pleading) (citing Bricklayers & Allied Craftworkers, 779 F.3d at 186-87).

    a.  Corporate Defendant

    Federal Rules of Civil Procedure 4(h)(1)(A) and 4(e)(1) state that service may be made on a domestic corporation by following state law in the state where the district court is located.  Under New York law, service on a limited liability company ("LLC") can be made by personally delivering a copy of the summons to: (1) a member of the LLC, (2) a manager of the LLC, (3) an agent authorized by appointment to receive process, or (4) any other individual designated by the LLC to receive process.  N.Y. C.P.L.R. § 311-a(a).  An affidavit by a service processor is prima facie evidence that service occurred by the method stated.  Old Republic Ins. Co. v. Pacific Fin. Servs. of Am., Inc., 301 F.3d 54, 57 (2d Cir. 2002).  "However, the Court need not assume service was proper, even on a motion for default judgment, if the affidavits are inconsistent or unreliable."  Feng Lin v. Quality Woods, Inc., No. 17 CV 3043, 2019 WL 1450746, at *3 (E.D.N.Y. Jan. 28, 2019) (citing Lopez v. Yossi's Heimishe Bakery Inc., No. 13 CV 5050, 2015 WL 1469619, at *6 (E.D.N.Y. Mar. 30, 2015)).

5

Although "the process server may rely upon the corporation's employees to identify the individuals authorized to accept service," such a reliance must be reasonable. Old Republic Ins. Co., 301 F.3d at 57. "A process server's reliance has been found unreasonable when he made no attempt to ascertain the title or corporate position of the individual who accepted the papers or even to inquire whether the individual was actually an employee of the defendant corporation." Prescription Containers, Inc. v. Cabiles, No. 12 CV 4805, 2014 WL 1236919, at *6 (E.D.N.Y. Feb. 14, 2014) (quotations omitted), report and recommendation adopted, 2014 WL 1237098 (Mar. 25, 2014).

Here, the process server's affidavit states that the corporate defendant was served via "MS. ASSET AUTHORIZED TO ACCEPT. Your deponent knew the person so served to be an agent authorized to accept on behalf of the entity to be served." (Affidavit of Service of Anthony McCreath, sworn to Sept. 17, 2020, Dkt. No. 5.) As defendants assert, the process server's affidavit is insufficient because the "deponent fails to state *how* he knew that the person was named Ms. Asset or *how* or *why* he believed that Ms. Asset was authorized to accept service." (Memorandum of Law in Support of Motion to Vacate Default, dated Mar. 25, 2022 ("Defs.' Mem."), Dkt. No. 17-3, at 6.) The failure to explain how the server knew that "Ms. Asset" was authorized to accept service is a "facial infirmity suggest[ing] service was not made to a person authorized to accept service." Shengjian Zhuang v. Hui's Garden Rest. Inc., No. 17 CV 7547, 2019 WL 1578193, at *1-2 (E.D.N.Y. Feb. 19, 2019) (collecting cases). Generally, "where courts have concluded that service on a 'Doe' is proper, the person has affirmatively indicated that she is authorized to accept service on behalf of the corporation." Feng Lin, 2019 WL 1450746, at *5 (citations omitted).

6

Rhaman is the sole owner and officer of corporate defendant, and he asserts that he does not know of a person by the name of Ms. Asset and that no person named Ms. Asset was ever authorized to accept service on behalf of the corporate defendant. (See Declaration of Mizanur Rhaman, dated Mar. 17, 2022 ("Rhaman Decl."), Dkt. No. 17-1, ¶¶ 5, 11.) Moreover, there is no indication that Ms. Asset affirmatively stated that she was authorized to accept service on behalf of the corporate defendant. Nevertheless, under New York law, "service of a single summons upon an officer of a corporate defendant who is also an individual defendant is effective service on both defendants." Feng Lin, 2019 WL 1450746, at *3, n.3 (citations and quotation marks omitted). Accordingly, whether the corporate defendant was properly served with the summons and complaint depends on whether Rhaman was properly served.

      b. Individual Defendant

To serve an individual defendant with process, Federal Rule of Civil Procedure 4(e) provides that service may be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." FED. R. CIV. P. 4(e)(1). Applicable New York law provides that personal service on an individual may be effected using one of four methods: (1) delivering the summons to the defendant; (2) delivering the summons to a person of suitable age and discretion at the defendant's place of business, home, or "usual place of abode" and mailing the summons to the defendant's last known residence or place of business; (3) delivering the summons to the defendant's agent for service of process; and (4) where service by the first three methods cannot be made with "due diligence," affixing the summons to the door of the defendant's actual place of business, home, or "usual place of abode," and mailing the summons to the defendant's last known residence or place of business. N.Y. C.P.L.R. § 308(1)-(4).

Plaintiff's process server's affidavit states that Rhaman was served with the pleadings by delivery to a person of suitable age and discretion at his residence, and mailing a copy to his residence. (Affidavit of Service of Anthony McCreath, sworn to Sept. 17, 2020 ("McCreath Aff."), Dkt. No. 6.) This is a proper method by which to effect service on an individual.[3] Indeed, Rhaman was served by the same method in the Crosby matter and has been defending that action. Moreover, Rhaman testified at a deposition related to the Crosby matter that he received papers possibly related to this action. (See Deposition of Mizanur Rhaman, dated Oct. 21, 2021 ("Rhaman Dep."), Dkt. No. 22-5, at 65 ¶¶ 2-25, 66 ¶¶ 2-17, attached as Ex. E to the Declaration of Rafi Hasbani, Esq. in Opposition to Defendants' Motion to Vacate, filed June 21, 2022 ("Hasbani Decl."), Dkt. No. 22.) Therefore, I find that the individual defendant was properly served with the summons and complaint. Because service on the individual defendant was proper, I find that the corporate defendant was also properly served.

  ii. *Excusable Neglect*

Despite being properly served, defendants argue that the existence of the Crosby

---

[3] The summons and complaint were served on "MS. ASSET, Relative, who verified that the intended recipient actually resides at this location" at 503 Euclid Avenue, Apartment 2F, Brooklyn, New York. (See McCreath Aff.) The process server's affidavit estimates that the individual who received service at Rhaman's residence was between 62 and 66 years old. (Id.) Furthermore, the address where service was made is the same address listed on Rhaman's driver's license and the documents related to the mortgage on his property. (See Driver's License, attached as Ex. C to Declaration of Rafi Hasbani, Esq. in Opposition to Defendants' Motion to Vacate, filed June 21, 2022 ("Hasbani Decl."), Dkt. No. 22-4; Servicing Agreement, attached as Ex. H to Hasbani Decl., Dkt. No. 22-8.) Rhaman's assertions that no person named Ms. Asset or matching the description in the process server's affidavit has ever resided at 503 Euclid Avenue, Apartment 2F, do not support his contention that service on him was improper. (See Rhaman Decl. ¶¶ 7-9.) New York law does not require the person of suitable age and discretion receiving service to reside at a defendant's residence, only that that person receive service at the defendant's residence, which was done here. See N.Y. C.P.L.R. § 308(1)-(4). Rhaman does not dispute that he resides at 503 Euclid Avenue, Apartment 2F, Brooklyn, New York.

8

matter caused confusion sufficient to constitute excusable neglect. (Defs.' Mem. at 8 ("Rhaman provided the [Crosby] papers to his attorney – not the Leger papers, and he has been litigating the second [Crosby] case with aid of counsel. The confusion he experienced is understandable.").) Under Federal Rule of Civil Procedure 60(b)(1), the court may vacate a default judgment on the basis of "mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b)(1). "'[E]xcusable neglect' is to be construed generously in the context of an attempt to vacate a default judgment." Am. All. Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 58 (2d Cir. 1996). Additionally, as previously discussed, "in ruling on a motion to vacate a default judgment, all doubts must be resolved in favor of the party seeking relief from the judgment in order to ensure that to the extent possible, disputes are resolved on their merits." Green, 420 F.3d at 104.

Defendants are currently defending an action brought by plaintiff's law firm, Crosby Cap. USA, LLC v. Amguard Ins. Co., which identifies the same mortgage at issue in the instant case as being held by the plaintiff in that action. (Declaration of Steven B. Ross, Esq., dated Mar. 25, 2022 ("Ross Decl."), Dkt. No. 17-2, ¶ 6.) No related case statement was filed by plaintiff's counsel in either matter, despite both plaintiffs being represented by the same firm. (Id. ¶ 13.) Defendants assert that plaintiff's counsel in the Crosby matter, the same counsel that has appeared for plaintiff in this action, never mentioned to defendants that the instant case was filed, pending, or had a pending motion for default judgment. (Id. ¶ 12.) However, Rhaman's testimony in a deposition related to Crosby contradicts this assertion.

When asked whether he was aware that plaintiff in this action had started a mortgage foreclosure action against him and the corporate defendant, Rhaman responded that he was not. (See Rhaman Dep. at 65 ¶¶ 16-19.) Then, when asked whether he has ever seen or

9

been served with papers by Simon Leger related to a mortgage foreclosure action, Rhaman responded, "I have received some papers. I don't really know what they are for. They just said court or something." (Id. ¶¶ 20-25.) Rhaman was next asked whether he spoke to an attorney about the papers he received, to which he responded that he showed them to his lawyer. (See id. at 66 ¶¶ 5-14.) Rhaman indicated that he learned about such papers when he was in Bangladesh and that when he returned to the United States, he took all of the papers to his lawyer. (See id. ¶¶ 14-18.)

       Some courts have held that confusion resulting from the time proximity and subject matter of two proceedings may constitute excusable neglect. See, e.g., Davis v. Musler, 713 F.2d 907, 915 (2d Cir. 1983) (finding the explanation that defendants assumed the papers they received related to a second action were related to an ongoing case and did not realize they had been named as defendants in a second lawsuit was plausible, but ultimately finding it unclear whether it constituted excusable neglect); McVicker v. Donnelly, 95 F.R.D. 353. 355 (E.D. Pa. 1982) ("[The] confusion resulting from the time proximity and subject matter similarity of the two proceedings clearly demonstrate that defendant's failure to respond constitutes 'excusable neglect.'") However, "where a party is notified that he is in default and he apparently makes no effort to appear pro se or to explain his situation to the opposing party and the court, such neglect is inexcusable." Original Appalachian Artworks, Inc. v. Yuil Int'l Trading Corp., 105 F.R.D. 113, 116 (S.D.N.Y. 1985); see also 1199SEIU United Healthcare Workers E. v. Alaris Health at Hamilton Park, No. 22 CV 00531, 2022 WL 17251772, at *5 (S.D.N.Y. Nov. 28, 2022) (finding that respondents' failure to monitor their attorney's handling of actions filed against them was more than merely negligent or careless and instead was egregious and not satisfactorily explained); Francis v. Ideal Masonry, Inc., No. 16 CV 2839, 2020 WL 6737463, at *4 (E.D.N.Y.

10

Nov. 17, 2020) (finding that a defendant's mistaken belief that participation in a separate proceeding was sufficient to discharge its duties indicates a willful and deliberate disregard for the litigation and was sufficient to conclude that it defaulted deliberately) (citations omitted). Moreover, "[d]istrict courts in this Circuit . . . have held that attorney or client carelessness does not constitute excusable neglect." Am. All. Ins. Co., 92 F.3d at 60 n.1 (collecting cases); see also State St. Bank & Tr. Co, 374 F.3d at 177 ("where a party fails to act with diligence, he will be unable to demonstrate that his conduct constituted 'excusable neglect.'") (collecting cases).

The Crosby complaint was filed four months after the complaint in this case. The argument that the filing of two related cases caused confusion sufficient to constitute excusable neglect might have carried more weight had defendants defaulted in that action. It is clear from the transcript of Rhaman's deposition in the Crosby matter that plaintiff's counsel attempted to bring this action to both defendants' and defendants' counsel's attention.[4] While defendants and counsel may have been confused by the close timing and similarity of the subject matter of the two actions, their failure to act with diligence to discover this action renders them unable to demonstrate that their conduct constitutes excusable neglect.

Because defendants were properly served and failed to demonstrate excusable neglect, I find that their default was willful.

---

[4] Defendants' counsel in this action also represents them in the Crosby matter. (See Ross Decl. ¶ 6.)

2. <u>Meritorious Defense</u>

"Despite any meritoriousness of an anticipated defense, a default judgment should not be vacated if the default was willful." <u>Hernandez v. La Cazuela de Mari Rest., Inc.</u>, 538 F. Supp. 2d 528, 534 (E.D.N.Y. 2007) (citing <u>Action S.A. v. Marc Rich & Co.</u>, 951 F.2d 504, 507 (2d Cir. 1991)). Although I have found defendants' default willful, I will address the remaining elements in the interest of completeness.

A defense is considered meritorious if the evidence submitted "would constitute a complete defense." <u>Enron Oil Corp.</u>, 10 F.3d at 98; <u>see also</u> <u>McNulty</u>, 137 F.3d at 740 (same). To establish the existence of a meritorious defense, "the defendant 'need not conclusively establish the validity of the defense(s) asserted.'" <u>OneWest Bank, N.A. v. Ruiz</u>, No. 14 CV 3207, 2018 WL 1318983, at *3 (E.D.N.Y. Mar. 13, 2018) (quoting <u>Davis</u>, 713 F.2d at 916); <u>see also</u> <u>Am. All. Ins. Co.</u>, 92 F.3d at 61 (explaining that the defense "need not be ultimately persuasive at this stage."). Rather, the defense presented must "give the factfinder some determination to make." <u>Am. All. Ins. Co.</u>, 92 F.3d at 61. Nonetheless, a defendant must do more than offer "conclusory assertions" in an affidavit or simply "dispute the amount of damages." <u>Bricklayers & Allied Craftworkers</u>, 779 F.3d at 187. Defendants assert that they have a meritorious defense to this foreclosure case because "plaintiff has filed another action contradicting the allegations in this action" which they contend constitutes fraud. (Defs.' Mem. at 9, 13.)

Under Rule 60(b)(3), the court may vacate a default judgment for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." FED. R. CIV. P. 60(b)(3). "To prevail on a Rule 60(b)(3) motion, a movant must show that the conduct complained of prevented the moving party from fully and fairly presenting his case."

12

State St. Bank & Trust Co., 374 F.3d at 176.  "[A] Rule 60(b)(3) motion cannot be granted absent clear and convincing evidence of material misrepresentations and cannot serve as an attempt to relitigate the merits."  Fleming v. New York Univ., 865 F.2d 478, 484 (2d Cir. 1989).  This burden exists because although the Rule "provides courts with authority to enable them to vacate judgments whenever such action is appropriate to accomplish justice," such authority "should only be applied in extraordinary circumstances."  Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 (1988).

As discussed above, defendants are currently defending another action brought by plaintiff's law firm related to the same property and mortgage.  (Ross Decl. ¶ 6.)  To support the argument that the default judgment should be vacated based on fraud by opposing counsel, defendants assert that the same law firm filed two complaints alleging that the same mortgage is held by two separate plaintiffs simultaneously.  (Id. ¶¶ 9, 10.)  The property at issue in both matters was damaged in a fire in December 2019.  (Id. ¶ 15.)  Plaintiff in the Crosby matter seeks to obtain a payout from defendants' insurer for its alleged insurable interest in the property as the holder of the mortgage note.  (Id.)  Plaintiff in this case seeks the value of the mortgage note in a foreclosure action.  (Id. ¶ 17.)  Defendants contend that "who holds the mortgage and note, if anyone, is a matter of dispute as [plaintiff's law firm] has submitted two contradictory actions to this Court."  (Id. ¶ 18.)

Plaintiff's submissions challenge defendants' contention.  "In the Crosby Action, it was only alleged that Crosby is the holder of the mortgage, not the owner.  As the holder and mortgage servicer, Crosby has its own right to proceed in that action. . . . Crosby was instructed to continue to service the loan after it sold it to Plaintiff."  (Memorandum of Law in Opposition to Defendants' Motion to Vacate the Default, dated June 21, 2022 ("Pl.'s Mem."), Dkt. No. 22-9,

13

at 10.) Additionally, "the servicing agreement allows Crosby to act on behalf of Plaintiff to protect Plaintiff's rights in the loan and the Subject Premises." (Id.; see also Servicing Agreement.) What defendants claim is fraud appears to be more akin to a standing issue. Although not explicitly argued by defendants, I will briefly discuss whether they have asserted a meritorious defense related to plaintiff's standing to bring this action.

"Under New York Law, a plaintiff has standing in a mortgage foreclosure action when it is the holder or assignee of the underlying note." Courchevel 1850 LLC v. Alam, 464 F. Supp. 3d 475, 480-81 (E.D.N.Y. 2020) (citation and quotation marks omitted); see also OneWest Bank, N.A. v. Melina, 827 F.3d 214, 222 (2d Cir. 2016) ("plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note."). A plaintiff can establish "prima facie, that it had standing by demonstrating that it had physical possession of the note prior to the commencement of the action, as evidenced by its attachment of the note to the summons and complaint at the time the action was commenced." CIT Bank, N.A. v. Moroz, No. 16 CV 4473, 2019 WL 6352467, at *3 (E.D.N.Y. Nov. 27, 2019) (quoting Deutsche Bank Nat. Tr. Co. v. Logan, 45 N.Y.S.3d 189, 191 (2d Dep't 2017)).

Here, plaintiff established its prima facie standing by attaching a copy of the note endorsed to plaintiff to the complaint at the commencement of the action and by providing the chain of assignments of the mortgage which ultimately assigned the mortgage to plaintiff. (See Pl.'s Mem. at 9; see also Note, Guarantee, and Mortgage attached as Exs. A, B, C to Compl., Dkt. Nos. 1-1, 1-2, 1-3.) Moreover, filing two separate actions to (1) foreclose on a mortgage and (2) recover insurance proceeds from damage to a property is not fraudulent, and defendants do not cite any authority to support their claim that it is. Accordingly, I find that defendants have

not established the existence of a meritorious defense.

        3.   Prejudice

"Delay standing alone does not establish prejudice." Enron Oil Corp., 10 F.3d at 98. Similarly, "costs incurred with respect to countering a defendant's motion to vacate do not constitute prejudice." Ruiz, 2018 WL 1318983, at *3 (citation and internal quotation marks omitted). Instead, a plaintiff opposing a motion to vacate a default must show "that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." Id. (quoting Davis, 713 F.2d at 916). Here, plaintiff has not shown that vacating the default judgment would be prejudicial to him. The parties have been engaged in settlement discussions and the matter has not been pending long. Nevertheless, the motion to vacate the default judgment should be denied because the default was willful, and defendants have not established the existence of a meritorious defense.

## CONCLUSION

Two of the three factors weigh against vacating the default: the default was willful, and defendants have not offered a meritorious defense. I therefore respectfully recommend that defendants' motion to vacate the default judgment be denied. Any objections to this report and recommendation must be filed electronically within fourteen (14) days. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a).

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
February 6, 2023